NELSON BUNKER HUNT TRUST ESTATE et al., Appellants,

v.

Jake JARMON, Sr., et al., Appellees.

No. 13722.

Court of Civil Appeals of Texas.

San Antonio.

March 22, 1961.

Rehearing Denied April 19, 1961.

Shank, Dedman & Irwin, Dallas, Scarborough & Roberts, Roy D. Roberts, Jr., Kenedy, for appellants.

King, Anderson & Porter, Neel & Seaman, Corpus Christi, for appellees.

BARROW, Justice.

This suit was brought by appellees against appellants for a declaratory judgment as to the validity of a certain oil and gas lease executed on September 15, 1956, by A. A. Moczygemba and wife, Sallie Moczygemba, two of appellants herein, as lessors, to Jake Jarmon, Sr., one of appellees herein, as lessee. Between October of 1956 and January of 1958, various undivided interests in and to such oil and gas lease were assigned by Jake Jarmon, Sr., to Charles R. Porter, Jr., Walter R. Taber, I. P. O'Neil, and the Papalote Corporation, the other appellees herein. The lease in question will be referred to as the Jarmon lease.

On July 17, 1959, Nelson Bunker Hunt Trust Estate, the other appellant herein, acting through its agent, Moliere Scarborough, Jr., obtained an oil, gas and mineral lease on the same premises from A. A. Moczygemba and wife, Sallie Moczygemba.

After the taking of depositions, appellants and appellees filed their respective motions for summary judgment. Said motions were heard together, and on May 28, 1960, the trial court entered its judgment: (a) denying the motion for summary judgment filed by appellants; (b) granting the motion for summary judgment filed by appellees; (c) declaring the Jarmon lease a valid and subsisting lease in accordance with its terms and provisions; and (d) extending the primary term of the Jarmon lease for a period of time equal to the time which had elapsed from July 17, 1959 (date of Nelson Bunker Hunt Trust Estate lease) to May 28, 1960 (date of judgment).

Appellants, and each of them, have perfected their appeal from all of said judgment.

The Moczygembas will be referred to herein as lessors, and Jake Jarmon, Sr., as lessee. The lease in question contained the usual "unless" clause reading as follows:

"5. If operations for drilling are not commenced on said land on or before one year from this date the lease shall terminate as to both parties unless on or before such anniversary date Lessee shall pay or tender to Lessor or to the credit of Lessor in the Karnes County National Bank at Karnes City, Texas * * * the sum of One Hundred and no/100 Dollars ($100.00), (herein called rental), which shall cover the privilege of deferring the commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender

of rental may be made by the check or draft of Lessee mailed or delivered to said bank on or before such date of payment * * *."

There is no contention that any drilling operations have ever been commenced on said land, and there is no contention that the first annual delay rental due on or before September 15, 1957, was not paid. Therefore, the lease was extended to September 15, 1958. The controversy herein arises in connection with the delay rental payable on or before September 15, 1958, for a period of twelve months, from that date to September 15, 1959.

With respect to this second annual rental payment, it is undisputed that Jarmon's assignees, the other appellees herein, sent their pro rata portion of the 1958 delay rentals to Jarmon, and entrusted him to act for them and make the payment, and that none of them, nor did Jarmon make the payment direct to lessors, but on or about August 18, 1958, Jarmon mailed his check for $100 to the Karnes County National Bank. The check bore the following notation: "Delay rentals A. A. Moczygemba 100 a. O. & G. lse. due 9–15–58 Karnes County." The check was drawn on the First-Nichols National Bank of Kenedy, Texas. Upon receipt of the check, the Karnes County National Bank made out a deposit slip to the account of lessors and sent a copy thereof to them. A copy was also sent to lessee Jarmon. The check, in the usual course of banking business, on August 19, 1958, was transmitted to the drawee bank. On August 21, 1958, the check was returned to the depository bank because of insufficient funds. On August 22, 1958, the check was re-submitted by the depository bank to the drawee bank, and on August 25, 1958, was again returned because of insufficient funds. On August 26, 1958, the check was again forwarded to the drawee bank for collection, but was again returned unpaid for insufficient funds. On August 30, 1958, the check was charged back to lessors and the unpaid check, without further endorse-

ment, together with advice of the charge, was mailed to lessors. The check was never paid. There was no communication or correspondence between any of the parties from August 18, 1958, to and including September 15, 1958, other than as above stated. The record shows that from August 14, 1958, to September 4, 1958, lessee did not have sufficient funds in his account with drawee bank to cover said $100 check; that lessee had no agreement with said bank to cover overdrafts, and that lessee knew when he tendered the check to the depository bank that unless prior arrangements were made to cover the overdraft the check would not be paid. On September 4, 1958, lessee borrowed $500 from drawee bank and deposited it in his checking account for the purpose of covering overdrafts, but from that time until September 15, 1958, he made no inquiries of either of said banks or the lessors as to the status of said check. Lessee keeps no running account of checks drawn or of his bank balance. He received his regular monthly bank statement during the first two weeks in September, 1958, but did not open the same until in January, 1959, when he learned for the first time that the check in question had not been paid. The lessors simply kept the unpaid check which was mailed to them by the depository bank and did not notify the lessee of its non-payment. On July 17, 1959, the lessors leased the land in question to appellant Nelson Bunker Hunt Trust Estate.

Appellants contend that by reason of the failure of the lessee to pay to lessors the $100 annual delay rental, either by payment to them or by depositing the same to their credit in the depository bank on or before September 15, 1958, the lease terminated on that date. On the other hand, appellees contend that the mailing of the check in question to the depository bank, even though the check was worthless and has not been paid, amounts to payment of the delay rental and discharged lessee's obligation under the contract, and on account of the facts lessors are estopped to

declare a forfeiture of appellees' lease. We agree with appellants.

The parties do not question that the lease created a determinable fee estate and, no drilling operations having been commenced, that unless the delay rental was paid on or before the anniversary date the lease terminated. See, Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27. But appellees seemingly take the position that the tender of the worthless check fulfilled lessee's obligation under the lease, and that if lessors have any cause of action it is upon the check.

We think the law is well settled that where a check is tendered in payment of delay rentals under an "unless" lease, if the lease is to be perfected the check must in fact be good. Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460. The Supreme Court in Muldrow v. Texas Frozen Foods, 157 Tex. 39, 299 S.W.2d 275, 278, in speaking of its prior holding in Hamilton v. Baker, said: "* * * the case stands only for the proposition that the delivery and acceptance of a good check constitutes such payment as will prevent the termination of an estate in land by operation of a special limitation."

In this case the contract is clear and unambiguous. In order to perpetuate the lease it is lessee's obligation to pay to lessors the sum of $100, or to deposit such amount to their credit in the depository bank. The mailing of a check or draft is simply the means of transmission and does not amount to payment unless the check is in fact good.

In connection with their second contention, appellees say that when the lessee received a copy of the deposit slip from the depository bank he had a right to presume that the payment had been made, and that when the check was sent

to the lessors they should have returned it to him; that by reason thereof, he was misled into thinking the delay rental had been paid, and appellants are estopped to claim that his lease has terminated. We overrule that contention. It is undisputed that the deposit slip was issued on the faith that the check would be honored, and that lessee knew when he gave it that it would not be. It is also undisputed that the depository used diligence to collect the check, and thus fulfilled its duty. The lessors had no right to collect said check; it was not payable to them but to the depository bank. Lessors owed no duty to assist lessee in the performance of his option. The lessee testified that he went to his bank several times between the giving of the check and September 4, 1958, when he finally borrowed the money to cover his check. During this time the check had been through the bank three times and had been returned unpaid. After he made the loan lessee did not check to see if the rental check had cleared. He did not examine his bank statement to see if the check had cleared. It is apparent that no one concealed the facts from lessee. He had a period of almost thirty days in which he could have discovered that the check had not cleared, and he could have done so from either of said banks. It is clear that both banks handled the matter in the usual and customary way. It is also clear that lessee was as well informed of the facts as were the lessors, or he had the means available at all times to ascertain the facts. Therefore, we are of the opinion that the element of estoppel is not raised in the case. Duval County Ranch Co. v. Foster, Tex.Civ.App., 318 S.W.2d 25; Kelly v. Heimer, Tex.Civ.App., 312 S.W.2d 430; Continental Credit Corporation v. Norman, Tex.Civ.App., 303 S.W.2d 449; Elsesser v. Cothan, Tex.Civ.App., 250 S.W.2d 591.

Having reached the conclusion that appellees' lease terminated on September 15, 1958, it follows that the trial court erred in rendering summary judgment for appellees, and in not rendering summary judgment in favor of appellants. Therefore, the judgment of the trial court is reversed and judgment here rendered that appellees take nothing by this suit.