**GOOD HOPE REFINERIES, INC.,**
**Plaintiff, Appellant,**

v.

**Belia R. BENAVIDES et al.,**
**Defendants, Appellees.**

**No. 79–1134.**

United States Court of Appeals,
First Circuit.

Argued June 6, 1979.

Decided July 17, 1979.

Stephen F. Gordon, Boston, Mass., with whom Carol J. Kenner, and Widett, Widett, Slater & Goldman, P. C., Boston, Mass., were on brief, for plaintiff, appellant.

Wayne H. Eisenhauer, Danvers, Mass., with whom John E. Mann, and Mann, Freed, Kazen & Hansen, Laredo, Tex., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal in a proceeding under Chapter XI of the Bankruptcy Act from a district court's dismissal of a complaint seeking to establish rights under an oil and gas lease. We affirm.

The facts giving rise to this appeal are fairly simple. On November 8, 1974, appellant refining company entered into an oil and gas lease with appellees. Under the terms of the lease, appellant as lessee was to begin drilling operations within one year, and, if drilling was not begun, the lease automatically terminated unless appellant paid a delay rental prior to the anniversary date of the lease. On October 30, 1975, appellant tendered a check for the delay rental. The next day, appellant filed a Chapter XI petition. Appellant's bank im-mediately set off against appellant's deposits and dishonored the delay rental check when it was presented for collection. On November 18, 1975, appellant tendered a cashier's check for the delay rentals, which tender was refused as untimely.

In March of 1976, appellant filed a complaint in the bankruptcy court seeking to establish its continuing rights in the lease. After hearing argument, the bankruptcy court dismissed the complaint on the ground that the lease had terminated automatically on November 8, 1975, and the court therefore lacked jurisdiction.[1] Appellant appealed to the district court, which held that because the lease was admittedly in existence on the date of filing of the Chapter XI petition, the bankruptcy court had jurisdiction to determine whether appellant had any continuing rights in the lease. The district court went on to hold that under the Texas law applicable to this case[2] the lease terminated automatically upon failure to make good tender of delay rental and that nothing in the Bankruptcy Act enabled the debtor-in-possession to cure such failure. We agree.

As an initial matter, appellant argues that the district court erred in reaching the merits of the dispute after deciding that the bankruptcy court did have jurisdiction to determine the rights involved. This argument breaks down into two contentions, that some as yet unspecified factual allegations remain to be proven to the fact finder and that appellant was unfairly surprised because it had no opportunity to argue the merits of the Texas law involved. As far as facts are concerned, appellant's complaint sets forth such information that "it appears to a certainty that the Plaintiff is entitled to no relief under any statement

---

1. As the district court noted, the grounds for the bankruptcy court's decision were somewhat unclear. Appellees had argued both that the court lacked jurisdiction because the asset involved had evaporated and that appellant's complaint should be dismissed on the merits because neither Texas law nor the bankruptcy act enabled the debtor-in-possession to revive a moribund mineral lease. The bankruptcy court's "jurisdictional" decision was based on a ground that could also support a decision on the merits, i. e., that the debtor had no rights in the lease.

2. The land and minerals involved are situated in Texas and the parties agree that Texas law provides the initial ground rules for determining the extent of appellant's property interests in the lease.

of facts which could be proved in support of the complaint." *Ballou v. General Electric Co.*, 393 F.2d 398, 400 (1st Cir. 1968). Appellant had ample opportunity to amend its pleadings before the bankruptcy court and failed to do so. More important, in both the district court and in this court, appellant failed to mention any relevant facts that might be added to the complaint, preferring instead to rely upon the general assertion that it is entitled to be heard on the facts. Such a bald demand, without more, is simply not enough when the facts alleged in the complaint affirmatively preclude relief.

As for opportunity to be heard on the merits, we note that appellees' original motion in the bankruptcy court both challenged that court's jurisdiction and moved to dismiss for failure to state a claim. Both arguments revolved around the same issues of Texas law. In the district court, appellees again argued that state law had terminated all of appellant's rights. This procedural posture put appellant on clear notice that the merits, as well as the jurisdictional question, were in issue. Finally, even if appellant were surprised by a decision on the merits in the district court, it has had ample opportunity to argue Texas law to this court. Even if appellant were excused from raising legal arguments below because of the unusual procedural history of this case, there is no excuse for not putting its legal cards on the table at this point. *Cf. Slotnick v. Straviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (court of appeals will affirm dismissal entered on erroneous ground if record reveals suit is without merit).

Turning to the merits, Texas law leaves no room for doubt about the effect of failure to make good tender of delay rentals. The form of conveyance used here is commonly called an "unless" lease. If the lessee fails to drill, his rights in the lease automatically terminate unless timely payment of delay rentals is made. The Texas courts characterize the conveyance as creating a determinable fee interest in the minerals in place, which interest reverts automatically to the grantor upon failure to drill or pay. *W. T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 28 (1929); *Waggoner & Zeller Oil Co. v. Deike*, 508 S.W.2d 163 (Tex.Civ.App.1974). Tender of a bad check is not sufficient tender to forestall the reverter. *Nelson Bunker Hunt Trust Estate v. Jarmon*, 345 S.W.2d 579, 581 (Tex.Civ.App.1961). This rule applies even if the lessor knows that the delay rental check has been dishonored prior to the anniversary date of the lease and fails to inform the lessee. *Id.* Thus, if appellant has any continuing rights in the oil and gas lease, such rights must spring from some change that federal bankruptcy law imposes upon normal Texas property rules.

Appellant argues that section 11(e) of the Bankruptcy Act, 11 U.S.C. § 29(e), changes the result that would be reached under Texas law. The first sentence of that section sets a two year statute of limitations for suits by a trustee and is concededly not applicable here. The second sentence provides a special 60 day period for the trustee (or debtor-in-possession) to perfect certain rights of the debtor, as follows:

"Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the proceeding or by applicable Federal or State law, as the case may be."

Appellant argues that the statutory language allowing the trustee to "take any

. . . . action or do any act" necessary to preserve the debtor's rights within 60 days of adjudication allowed appellant to make the delay rental payment within 60 days of the date of filing of the Chapter XI petition. If this argument is correct, then appellant's tender of delay rentals on November 18, 1975, preserved its rights in the lease.

■ The parties agree that the act appellant sought to perform within the 60 day period may be fairly analogized to exercising an option to extend an option to purchase property. There is precedent for so viewing the function of a delay rental payment. *Empire Gas & Fuel Co. v. Saunders*, 22 F.2d 733 (5th Cir. 1927), *cert. dismissed*, 278 U.S. 581, 49 S.Ct. 184, 73 L.Ed. 518 (1928). Thus, appellant would have us read section 11(e) as providing an automatic extension of an option contract for a period of up to 60 days from the date of adjudication. We cannot do so.

Although not a model of clarity, we think the statute can only be read as affecting two separate types of limitations derived from two different sources, both types being extended for 60 days upon filing. First, there are "period[s] of limitation" created "by an agreement". Such periods are extended only if they set a limit on the time available "for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, *or the like* . . . ." (Emphasis added.) Second, there is a broader category of types of limitations, giving the trustee an extra 60 days "for taking any action, filing any claim or pleading, or doing any act . . . ." This broader category of limitations extended by section 11(e) only comes into play, however, "where in any *proceeding*, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal

or State law . . . ." [3] (Emphasis added.) The instant case does not involve any "proceeding". Rather, if the time limit on appellant's option to drill can be viewed as a "period of limitation" at all, it is a limitation created by agreement.

■ By its language section 11(e) only expands consensual limitations if they involve "the like" of presenting proof of claim, proof of loss, demand, or notice. We do not think that making a payment to extend or exercise an option is akin to making a claim against an insurance policy or surety bond. *Cf. Goosen v. Indemnity Ins. Co. of North America*, 234 F.2d 463 (6th Cir. 1956) (section 11(e) applies to extend period to file notice of claim on bond). In the case of a payment to extend an option, the debtor is obliged to tender a certain performance, which performance is the consideration for the extension, by a certain time, and time is expressly of the essence. In the case of a notice to an insurance company, the debtor must comply with a condition precedent on the company's obligation to perform, which condition is not in the nature of the concurrent condition of consideration supporting the bargain, but rather is a condition protecting the insurance company from stale and possibly fraudulent claims. Two examples make this theoretical distinction concrete: an insurance company would not be unfairly surprised or prejudiced if a 60 day notice of claim provision were extended by operation of law to 120 days, but the seller of a ten day option to purchase securities would find his expectations, and his economic position radically altered if the option were suddenly extended to 70 days.

The Fifth Circuit applied a similar rationale in *Schokbeton Indus. Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir. 1971). The debtor Products was an exclusive licensee of Industries. Products defaulted on royalty payments. Pursuant to the licens-

---

**3.** We think this reading the only logical parsing of the admittedly complex sentence involved. The key to the logical breaks in the sentence is the use of the word "where". As we read it, the sentence can be simplified as follows: "*Where* an agreement limits the time to make a claim against the promisor, *or where* the rules of a proceeding limit the time for taking a procedural step in that proceeding, *and where* such a time limit has not expired at the time of filing, the trustee has a minimum of 60 days from filing to make a claim or take a procedural step."

ing agreement, Industries demanded cure within 60 days, on pain of termination of the licensing agreement. Products then filed a Chapter XI petition. When the 60 days allowed under the contract to cure a default had expired, Industries sent Products a notice of termination. Four months later, Products sued in bankruptcy court to establish the vitality of the licensing agreement and arrange a schedule of payment of overdue royalties. Without considering the fact that Products had not cured its default within the 60 day period provided by section 11(e), the Fifth Circuit held that section 11(e) "provides no basis for suspending the debtor's obligations under an executory contract while simultaneously holding the other party to the bargain." *Id.* at 176.

We agree with appellant that *Schokbeton* is distinguishable on its facts; the 60 day period under 11(e) had long since expired when the debtor tried to cure its default. Moreover, we think the *Schokbeton* court's holding a bit overbroad. Technically, a debtor's obligation to inform an insurance company of a claim *is* suspended by section 11(e) while the company is simultaneously held to the bargain. Nevertheless, we think the basic rationale of *Schokbeton* supports our refusal to apply section 11(e) to extend option contracts. The *Schokbeton* court pointed out that when a trustee exercises his power under section 70(b), 11 U.S.C. § 110(b), to assume an executory contract, the trustee obtains only such contractual rights as the debtor had and assumes all burdens to which the debtor was subject. *Id.* at 175 (and cases cited therein). If the debtor has committed, or the trustee commits, an incurable breach, the trustee has no continuing rights under the contract. *Cf. Matter of Gulfco Investment Corp.*, 520 F.2d 741 (10th Cir. 1975) (trustee allowed a "reasonable" time to decide whether or not to adopt installment purchase contract; reasonable time may exceed contractual deadline for installment payment if large equity involved and contract complex). It would be anomalous indeed if section 11(e), a provision dealing mainly with suits and claims by the trustee, could be used to alter contractual rights substantially where time

is of the essence and the debtor or the trustee has defaulted. It would be even more anomalous if, in the case of an option contract, section 11(e) allowed the trustee to procure a right that never existed and for which no consideration has ever been paid, i. e., the right to exercise an option long after its termination date.

We think the preceding discussion also disposes of appellant's arguments based upon the Bankruptcy Reform Act of 1978, P.L. No. 95–598, 92 Stat. 2549. Section 108(b) of the Reform Act replaces the old section 11(e) and adds to the various acts permitted within the 60 day period a power to "cure a default". 92 Stat. 2556. Citing inconclusive legislative history, appellant argues that section 108 was meant to recodify section 11(e) and thus should influence our reading of the old Act. Assuming *arguendo* that the new Act in any way reflects upon the old, we do not think the new section 108(b) helps appellant. When a debtor or a trustee fails to exercise or renew an option by paying the agreed price, there is no contractual "default" to be cured. The rights that the debtor purchased for the price of the option have merely expired of their own terms. There is no obligation to exercise or extend such an option, and thus no default when further payment is not made. Appellant has cited no case supporting its contrary reading of section 11(e), and no language in the statute nor reason of policy justifies such a reading. We must reject appellant's position.

■■ Finally, we have considered appellant's extensive, if vague arguments that the bankruptcy court should be allowed to consider the inequities involved here and exercise its equitable jurisdiction to remedy the situation. The law is settled, however, that "unless" leases are true option contracts in the sense that failure to drill or pay does not work a forfeiture. *See Empire Gas & Fuel Co. v. Saunders, supra.* The simple answer to any apparent harshness of the result in this case is that a prudent man who plans to file a Chapter XI petition tomorrow uses a cashier's check to make an important payment today.

*Affirmed.*