In re SANTA FE DEVELOPMENT AND MORTGAGE CORPORATION, Debtor.

SANTA FE DEVELOPMENT AND MORTGAGE CORPORATION, Appellant,

v.

James L. McCORMACK and Loretta J. McCormack, Appellees.

Bankruptcy No. EC 81–1055–KLV.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued July 16, 1981.

Decided Dec. 28, 1981.

**166**

Lynn Anderson Koller, Emeryville, Cal., for appellant.

Robert C. Cook, Sacramento, Cal., for appellees.

Before KATZ, LASAROW and VOLINN, Bankruptcy Judges.

KATZ, Bankruptcy Judge:

Prior to the filing of the within bankruptcy the debtor, Santa Fe Development and Mortgage Corporation, was involved in extensive state court litigation with the appel-lees, James L. and Loretta J. McCormack (hereinafter McCormack). As a result of that litigation the parties entered into a stipulated settlement which became effective on July 11, 1979.

The settlement provided the basis for the sale of three parcels of property located in Roseville, California. The purchase price for the property was $485,000. The escrow provided that the sale would be consummated upon Santa Fe Development paying $285,-000 in cash and executing a note for $200,-000. The escrow further provided that the payment must be made on or before June 16, 1980. Santa Fe Development failed to close escrow on June 16, 1980.

The settlement agreement allowed Santa Fe Development to extend the final day to close escrow by paying a non-refundable sum of $25,000. Under the agreement the escrow could be extended for three thirty day periods, however, the escrow could not be extended past September 16, 1980.

In accordance with the agreement Santa Fe Development extended the close of escrow until August 16, 1980 by making payments on June 15, 1980 and July 15, 1980. The agreement also provided that in the event escrow did not close, then Santa Fe Development would lose all rights in and to the subject property.

On August 5, 1980 the debtor filed a petition under Chapter 11 of the Code. The debtor failed to extend the escrow beyond August 16, 1980. However, on August 20, 1980, the debtor-in-possession filed a complaint for declaratory relief. The complaint sought a determination as to the respective rights of the parties including a determination as to whether the subject parcels were property of the estate.

On November 20, 1980 the trial court held a hearing on the appellees' motion for summary judgment.

On February 12, 1981 the trial court granted summary judgment in favor of McCormacks and terminated all rights that the debtor may have had in the subject property. In rendering the decision the trial judge held that 11 U.S.C. § 362 does not

stay the time in which to perform an act under a contract.

On appeal appellant claims that the trial court erred in holding that the running of the escrow period terminated any rights that the debtor-in-possession acceded to under 11 U.S.C. § 541. Appellant argues that at a minimum the court should have set a date upon which the debtor-in-possession would need to perform after it accepted the executory contract.

The appellee claims that under California law the failure to exercise an option by the last day to do so terminates the option. See *Simons v. Young*, 93 Cal.App.3d 170, 155 Cal.Rptr. 460 (1979). Citing *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979)) *Cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979). Appellee states that the filing of the within bankruptcy did not act to stay the running of the escrow period.

It is undisputed, between the parties, that on the date the bankruptcy was filed the debtor-in-possession had the right to assume the executory sales contract and either consummate the sale or extend the closing date of escrow through the appropriate payment. The sole question before the Panel is whether the above stated options terminated on August 16, 1980 or whether they were preserved for the estate through the operation of the Bankruptcy Code.

Were this case to be decided strictly under California law it is clear that the debtor would have lost all rights in the contract when the escrow period was not extended on August 16, 1980. See *Simons v. Young*, supra. However, the Bankruptcy Code and its inherent purposes are of paramount concern in deciding cases which come under its jurisdiction. We must therefore turn to the Code in order to determine whether the law of the state is altered by the application of the Code. U.S. Const., art. VI, cl. 2.

Section 108 (11 U.S.C. § 108) provides for extensions of time to perform various acts. Subsection (a) (11 U.S.C. § 108(a)) provides a minimum period of two years in which the trustee may commence an action. Subsection (c) (11 U.S.C. § 108(c)) extends the time in which a creditor may bring an action against a debtor for a minimum of 30 days after the expiration of the stay under sections 362, 922 or 1301. Subsection (b) (11 U.S.C. § 108(b)) gives the trustee 60 days to take other actions not covered under subsection (a). House Report No. 95–595, 95th Cong. 1st Sess. (1977) 318, U.S.Code Cong. & Admin.News 1978, p. 5787. The purpose of section 108 is to permit the trustee,[1] when he steps into the shoes of the debtor an extension of time for filing an action or *doing some other act that is required to preserve the debtor's rights.* House Report No. 95–595, supra. (emphasis added).

Section 108(b) was derived in part from section 11(e) of the Act. (11 U.S.C. § 29(e)). Under the Act several courts held that section 11(e) did not toll the period in which an option must be exercised. See *In re Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979); *cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir. 1972).

The court in *Good Hope Refineries* found that the wording of 11(e) limited its broader application to "proceedings." The "option to drill" in that case was construed as a limitation created by agreement and therefore not a proceeding. The court further held that 11(e) only expanded consensual limitations if they involved the "like" of presenting a proof of claim, proof of loss, demand, or notice. The court opined that a payment to extend or exercise an option is not akin to making a claim against an insurance company or surety bond.

Even though the *Good Hope Refineries* case was decided under the Act the court

---

1. Although the statute speaks in terms of giving the trustee an extension of time, the section would have equal force and effect when utilized by a debtor-in-possession. Section 103 (11 U.S.C. § 103) provides that Chapters 1, 3 and 5 apply in a case under Chapter 11. Section 1107(a) (11 U.S.C. § 1107(a)) provides that a debtor-in-possession shall have all the rights and powers of a trustee serving in a case under this chapter subject to certain limitations not applicable herein.

also analyzed section 108(b) of the Code. The court held that the only change brought about by section 108 from existing law was to give the trustee an extension of time to "cure defaults." The court rationalized that once an option has run there is no contractual default to cure.

We think that the *Good Hope Refineries* case overlooks basic differences in syntax between section 11(e) and the current section 108. While the syntax of 11(e) may have limited a broader application of the extension of time to actions in "proceedings" we believe that section 108 does not contain such a limitation. As applied to this case we read section 108(b) to state:

> "[I]f . . . an agreement fixes a period within which the debtor . . . . may file a pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or *perform*, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and (2) 60 days after the order for relief." (emphasis added)

Under such a reading we view the act of making a payment to extend an escrow or consummate an executory contract of sale as the performance of any other act similar to filing a demand, notice or curing a default. Therefore, under section 108(b) the debtor-in-possession has a minimum of 60 days in which to accept an executory contract and make the appropriate payment necessary to preserve the contract for the benefit of the estate. We find that a broad reading of section 108(b) better serves the purposes of bankruptcy by preserving the maximum amount of property and business opportunities to be used for the rehabilitation of the debtor. See also *Matter of Gulfco Investment Corp.*, 520 F.2d 741 (10th Cir. 1975) (trustee should be allowed a reasonable period of time to decide whether or not to adopt an installment purchase contract if

large equity is involved and issues are complex); House Report No. 95–595, supra at 318.

The courts in the *Good Hope Refineries and Schokbeton* cases were worried about the inequitable results which might occur where the debtor's obligations under an executory contract are suspended while simultaneously the other party is held to the bargain. For example, the seller of a ten day option to purchase securities could find his expectations and economic position radically altered if the option were automatically extended 60 days. While we hold that the effect of section 108(b) is to at a minimum extend the limitation period by 60 days, we find that the Code provides adequate procedures for shortening this time such that gross inequities will not result. See 11 U.S.C. § 365(d)(1)(2); 11 U.S.C. § 105(a). Under the Act periods of limitation could be extended by an order of the court where the equities of the case demanded. *Matter of Gulfco*, supra at 743. Our reading of section 108(b) merely switches the burden to the creditor to reduce the extension of time during the 60 day period under the statute.

Having held that debtor-in-possession had a continuing right to perform the executory contract for a 60 day period following the filing of the petition under 11 U.S.C. § 108(b) (unless reduced by the court), we hold that the trial court erred in holding that the debtor's rights to the property terminated on August 16, 1980.

We therefore reverse on this issue alone and remand the case to the trial court for further proceedings in conformance herewith.

VOLINN, Bankruptcy Judge, concurring:

I concur with the result but differ with the majority in their application of 11 U.S.C. § 108(b) to the facts in this case. Rather than viewing Santa Fe's rights as those of an optionee, I would characterize its rights as those arising from an executory contract.[1]

---

1. In their brief, appellants argue that the con-    tract between the parties is executory which

In attempting to avoid the impact and reasoning of *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979) *cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979), the majority tries to distinguish § 108(b) of the Code from § 11(e) of the prior Bankruptcy Act. The *Good Hope* court, while considering § 11(e), had occasion to also consider its successor, § 108(b). The court reasoned that basically, as with § 11(e), the term "or perform any other similar act" related to the preceding language, particularly as to curing a default. Since lapse of an option does not involve default, the time for cure is not extended by § 108(b).

The wording of § 108(b), emphasized by the majority, that an extension is provided for the trustee "to cure default, or perform any other similar act" is still subject to the logic of *Good Hope*. There is a significant qualitative difference between default and allowing an option to lapse. The essential characteristic of an option is that it purchases a specific calendar period during which the optionee has the discretion to make a choice. Non-exercise of the option does not involve a default, but, rather, exercise of discretion not to proceed with the option. Default, on the other hand, implies failure to meet a binding commitment. In this regard, the logic in *Good Hope* is persuasive. See also *In re Trigg*, 630 F.2d 1370 (10th Cir. 1980).

The fundamental legal relationship between Santa Fe and the McCormacks was based on their contract for purchase and sale of real estate. Disagreements arose and litigation ensued. Consequently, in July, 1979, the parties entered into a settlement agreement which provided that:

"In the event Santa Fe does not close escrow on or before June 16, 1980, then in such event, Santa Fe shall, upon payment to McCormacks of the sum of $25,000 cash on or before June 17, 1980, have an additional 30 days to close said escrow until July 15, 1980..."

The agreement provided for three extensions to September 15, 1980, further providing that:

"In the event said escrow does not close on or before September 15, 1980, then, in such event, Santa Fe shall have no further right or interest in and to the subject real property..."

The agreement made it clear that the foregoing provisions were ancillary to, and in settlement of, the original contract and litigation thereon. The litigation was not to be concluded until the alternatives incident to settlement had occurred. It states:

"It is the intent of this agreement to eliminate any further disputes or litigation between the parties hereto. If Santa Fe does not close escrow on or before September 15, 1980, the dismissal with prejudice of all parties shall be filed in the above entitled action. If Santa Fe closes escrow on or before September 15, 1980, the dismissal with prejudice shall likewise be filed by the escrow in the above entitled action concurrently with the recording of the deed."

No option to purchase was involved in the settlement agreement. The agreement focuses upon September 15, 1980, more or less as a deadline replacing that stated in the original contract.

The question presented in this light is whether §§ 365 and 362 apply. The automatic stay of § 362 came into effect on August 5, 1981, when Santa Fe filed bankruptcy. This suspended the rights of the parties under the settlement. Bankruptcy intercepted the conclusion of the litigation insofar as it could effect dismissal of appellant's claim. Although the two $25,000 payments to extend the date escrow was to be closed did not apply to the purchase price and did not create an equity in the property, they may be considered from an equitable standpoint. Since the time within which to close escrow was extended by operation of § 365 of the Code, if the trustee decides to adopt the contract, it will have to make the $25,000 payment it missed, with

may be assumed or rejected under 11 U.S.C. § 365. Ironically, reference to § 108(b) sur-

faced tangentially in appellee's brief with a quote from *Good Hope, infra.*

interest. See *Matter of Gulfco Investment Corporation*, 520 F.2d 741, 744 (10th Cir. 1975). In the event that the trustee rejects the contract, appellees will have a claim against the estate for damages. *Id.*

In conclusion, I would hold that the legal relationship between the parties originated in an executory contract subject to a settlement which was not concluded prior to bankruptcy. Consequently, the filing of bankruptcy gave the debtor-in-possession or the trustee, the right to accept or reject the contract as provided for by § 365. In effect the date on which escrow had to be closed, was suspended.