**In re INTERMET REALTY PARTNERSHIP, Debtor.**

**INTERMET REALTY PARTNERSHIP, Plaintiff,**

v.

**FIRST PENNSYLVANIA BANK N.A., Defendant.**

**Bankruptcy No. 82–03059K.
Adv. No. 82–1734K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 4, 1983.

Michael L. Temin, Philadelphia, Pa., for plaintiff.

Michael S. Lubline, Philadelphia, Pa., for debtor.

John Wetzel, Philadelphia, Pa., for Creditors' Committee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on the complaint of Intermet Realty Partnership, the Debtor, in which Intermet requests this Court to enjoin the Defendant, First Pennsylvania Bank N.A., from interfering with the possession and quiet enjoyment of certain real property. The Defendant, First Pennsylvania Bank, N.A., filed a Motion to Dismiss the complaint. The Motion was opposed by the Debtor as well as by the official creditors' committee which was permitted to intervene in the adversary action. The Court will grant the motion and dismiss the complaint.[1]

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

On December 5, 1979, two (2) installment sales agreements were executed concerning six (6) parcels of real estate located near and along Kennedy Boulevard in Philadelphia.[2] First Pennsylvania Bank, N.A. (hereinafter referred to as the Bank), the original owner of the aforementioned property, entered into one of said agreements to convey the property to J Unlimited. J Unlimited, through the second agreement, sold the property to Intermet. Each of the agreements called for quarterly interest payments with a final date for the payment of the principal. Through mutual consent of all parties, Intermet, J Unlimited and the Bank, the final due date of the installment sales agreements was extended from May 21, 1982 to July 6, 1982. Simultaneously, the principal amount remaining under the agreement was reduced.

Pursuant to the terms of the installment sales agreement between First Pennsylvania Bank, N.A. and J Unlimited, if the balance of the sales price was not paid by July 6, 1982, the agreement would terminate automatically.[3] Upon termination all rights in the property would revert to the original owner, the Bank. This provision was also specifically incorporated in the installment sales agreement executed between J Unlimited and Intermet. The second installment sales agreement further provided that all of Intermet's installment payments to J Unlimited must be applied towards J Unlimited's payments to the Bank. Intermet, in the second installment sales agreement, agreed to be bound by all of the obligations created under the first agreement. First Pennsylvania Bank required Intermet to be bound by the obligations contained in the first agreement as a condition to the Bank's approval of the sale of the property to Intermet.[4] On July 1, 1982, Intermet filed a petition for relief under Chapter 11 of the Bankruptcy Code. J Unlimited and First Pennsylvania were notified of the filing on that date. On July 6, 1982, the Bank notified J Unlimited and Intermet that it considered the installment sales agreement to be terminated, thus, terminating J Unlimited's agreement with Intermet.[5] Termination would result in all rights being restored to the Bank. On July 9, 1982, the Bank notified two (2) parking lot operators, leasing the subject property from Intermet, that the agreement had been terminated. First Pennsylvania notified the lessees of their option to either vacate the property or to enter into a new lease arrangement with the Bank.

On or about July 13, 1982, Intermet filed the above-captioned complaint against the Bank alleging that First Pennsylvania had violated the automatic stay imposed by Section 362 of the Bankruptcy Code. The complaint further alleged that First Pennsylvania's actions interfered with Intermet's anticipated sale of the subject property and had caused irreparable harm to the debtor. Intermet requested the Court to enter a temporary restraining order prohibiting First Pennsylvania from interfering with Intermet's interest in the property. Intermet also requested the Court to find First Pennsylvania Bank to be in contempt of court as a result of the violations of the automatic stay.

The Bank filed a motion to dismiss Intermet's complaint for failure to state a claim on which relief may be granted pursuant to

2. Although the Creditors' Committee's memorandum opposing the defendant's motion to dismiss refers to seven (7) parcels, the debtor and the defendant make reference to only six (6) parcels which appears to be the correct number.

3. July 6, 1982 was the amended and final due date of the agreements.

4. Section 4.01 of Intermet's installment sales agreement with J Unlimited bound Intermet to assume and fulfill each and every obligation of J Unlimited to First Pennsylvania Bank relating to said agreement.

5. Section 20 of the agreement between the Bank and J Unlimited provided that if the required amounts were not fully paid to First Pennsylvania and the premises conveyed to J Unlimited by July 6, 1982 (the amended date), the agreement would be null and void and of no further force or effect. First Pennsylvania Bank claimed that because the required amounts were not remitted in a timely fashion that the agreement had terminated.

Bankruptcy Rule 712 and Federal Rule of Civil Procedure 12(b)(6). The creditors' committee was granted permission to intervene in this proceeding by Order of August 11, 1982.

Intermet opposed First Pennsylvania's motion to dismiss on the grounds that Intermet retained an equitable interest in the property. This equitable interest consisted of a possessory as well as a contractual interest. Intermet claimed that these interests were protected by the Bankruptcy Code. The creditors' committee supported this position fully in their motion and memorandum of law.

 The first question before the Court is whether Intermet's complaint states a claim upon which relief may be granted. If it does not, the defendant's motion to dismiss must be granted. Pursuant to Bankruptcy Rule 712, the questions of whether a complaint states a claim upon which relief may be granted is determined under Federal Rule of Civil Procedure 12(b)(6). Under the terms of Rule 12(b)(6), the Court must consider this motion to dismiss as a motion for summary judgment and apply Federal Rule of Civil Procedure 56. Summary judgment is a drastic remedy. It eliminates a party's right to a trial on the merits, and thus, should be available only under limited circumstances. *In the matter of Silverman,* 10 B.R. 727, 728 (Bkrtcy.S.D.N.Y.1981). In determining such a motion, the Court does not try issues of fact. The sole task is to determine whether there are any factual issues to be tried. The Court must consider all of the pleadings in determining whether any genuine issue of material fact exists. If no such issue exists, the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The Court, in considering such a motion, must assume all of the allegations set forth in the claimant's pleadings as true; and, the Court must resolve all ambiguities and inferences in favor of the party against whom summary judgment is sought. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Silverman, supra* at 729. The moving party has the burden of demonstrating the absence of any genuine dispute of material facts. *Heyman v. Commerce and Industry Insurance Company,* 524 F.2d 1317, 1320 (2nd Cir.1975). In this case, however, the facts as recited are undisputed.

In considering the instant motion for dismissal, the Court must determine whether Intermet has any interest in the subject property; and, the extent of such interest if it should be found to exist. Should the Court find that some interest exists, the Court must determine the applicability of the Bankruptcy Code to protect such interest.

Intermet claims that the acts and conduct of the parties involved in the agreements evidence the existence of a contract between the Bank and Intermet. First Pennsylvania Bank asserts that Intermet was not a party to the original sales agreement with J Unlimited. First Pennsylvania also argues that Intermet was prohibited from acquiring any rights in the property, and from making any other agreement or contract which would interfere with the original installment sales agreement between First Pennsylvania and J Unlimited.[6]

In spite of the persuasive argument of the Bank, the Court finds that Intermet was clearly and intentionally a factor in First Pennsylvania's original installment sales agreement with J Unlimited. Although the Bank asserts that J Unlimited was not permitted to assign its rights under

---

6. In support of this argument, First Pennsylvania refers to paragraph 34(a) of the installment sales agreement executed between J Unlimited and First Pennsylvania, which reads as follows:

Except as provided in subsection b below, neither this agreement nor any right, title, or interest of buyer herein or in the premises or arising hereunder may be transferred, conveyed, assigned, pledged, encumbered, or hypothecated, either voluntarily, by operation of law, by issuance, assignments, or transfers of stock of buyer, if buyer is a corporation or of a partnership or ownership interests of buyer, if buyer is a partnership or a joint venture, whether by sale, exchange, conveyance, merger, consolidation or otherwise.

the agreement to any party[7], the wording of the agreement specifically allowed one (1) assignment.[8] The agreement between the Bank and J Unlimited also contains numerous other references to Intermet and to the second installment sales agreement concerning the subject property. On the basis of an examination of the installment sales agreement between the Bank and J Unlimited, it is clear that First Pennsylvania Bank was entirely cognizant of the fact that J Unlimited would transfer its interest in the subject property to Intermet.[9] It is also clear that the Bank acquiesced in this transaction.[10]

By virtue of the first installment sales agreement, First Pennsylvania Bank transferred possession of the subject property, as well as an option to acquire clear title to the property, to J Unlimited. J Unlimited, through the second installment sales agreement, transferred both possession and the option concerning the subject property to Intermet.

Both of the agreements, by their own terms, were scheduled to terminate on July 6, 1982. Intermet filed its petition under Chapter 11 on July 1, 1982. Therefore, we find that as of the date of the filing, Intermet retained an interest in the aforementioned property, as a result of the continued viability of the agreements of sale on the date of the filing of the petition.

Under the Bankruptcy Code, all legal or equitable interests of the debtor become property of the estate as of the filing of the petition. 11 U.S.C. § 541(a). There is no

question that, as of the filing of the petition on July 1, 1982, Intermet had an interst in the subject property. However, the agreements of sale provided that this interest would expire on July 6, 1982. Both Intermet and the Committee have asserted that either section 108 or section 365 of the Bankruptcy Code operate to extend these agreements of sale. The Bank, however, argues that the agreements expired pursuant to their own terms on July 6, 1982.[11]

The major issue in the case at bench is to determine the nature and extent of the interest conferred on the debtor by the agreements of sale. Concomitantly, the Court must determine the interest which becomes property of the estate. We have previously held that the nature and extent of the debtor's interest in the property must be determined under appropriate state law. *In re Lloyd,* 18 B.R. 624 (Bkrtcy.E.D.Pa. 1982); *In re English,* 20 B.R. 877 (Bkrtcy.E. D.Pa.1982); *In re DiToro,* 22 B.R. 392 (Bkrtcy.E.D.Pa.1982). Property interests are created and defined by state law, therefore, they should not be analyzed any differently in a bankruptcy proceeding. *Id.* See, also, *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Lewis v. Manufacturing Nat. Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

In the instant case, the debtor and the Committee assert that the agreements in question are executory contracts which may be assumed by the debtor pursuant to Section 365 of the Code. 11 U.S.C. § 365(d). The Bank, however, asserts that the agree-

---

7. Paragraph 38 of the installment sales agreement between First Pennsylvania and J Unlimited also addresses this issue:

 The whole agreement between the parties relative to the premises and to the sale thereof is herein written and the parties are not bound by any agreements, understandings or conditions otherwise than are expressly set forth and stipulated herein. No change, alteration, amendment, modification or waiver of any of the terms or provisions hereof shall be valid unless the same be in writing and signed by the parties.

8. Paragraph 34(b) of the installment sales agreement between the Bank and J Unlimited provides as follows:

 (b) *Buyer may sell its interest in the Premises to Intermet* pursuant to an installment sales agreement between Intermet and Buyer. (emphasis added.)

9. The Bank acknowledged the agreement between Intermet and J Unlimited in several additional paragraphs of the first agreement. Paragraphs 4, 22, and 34(f).

10. Id. See, also, footnote 8.

11. See footnotes 3 and 5, *supra,* and related text.

388

ments are options which expired on July 6, 1982 and that there are no longer any contracts for the debtor to assume.

The agreement between the Bank and J Unlimited clearly stated that the contract would expire, and be without further force and effect, on July 6, 1982 if the requisite payment was not made.[12] No further action was required by the parties to terminate the agreement. Nor was there any affirmative duty upon the debtor to fulfill the agreement. The only penalty to the debtor would be the loss of the right to purchase the property.

■ Under such circumstances, the Court must find the agreement to be an option. In *Suburban Improvement Co. v. Scott Lumber Co.*, 59 F.2d 711 (4th Cir.1932), the Fourth Circuit Court of Appeals stated:

The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option. "An 'option' is simply a contract, by which the owner of property agrees that another shall have a right to buy it [the property] at a fixed price within a certain time." ... Where, however, there is not merely the right but the obligation to buy, the contract is not one of option, but is a binding contract of sale. (citations omitted). *Id.* at 715.

■ This position is supported by the law of the Commonwealth of Pennsylvania. Time is always of the essence in an option contract and, unless exercised, an option expires on the specified date. *Western v. SEPTA*, 285 Pa.Super. 187, 427 A.2d 175 (1981); *Loughney v. Quigley*, 279 Pa. 396, 124 A. 84 (1924); *Warner Bros. v. Profitt*, 329 Pa. 316, 198 A. 56 (1934). In order for the purchaser to acquire an equitable interest, he must exercise the option. *Phillips v. Tetzner*, 357 Pa. 43, 53 A.2d 129 (1947). There can be no binding agreement be-

tween the parties until the option is exercised. *Warner, supra.* Sales of land pursuant to agreements similar to that in the instant case are in the nature of an option; and, if the requisite payments are not made, the Supreme Court of Pennsylvania has held that the agreement expires under its own terms. *Verstine v. Yeaney*, 210 Pa. 109, 59 A. 689 (1904); *Barnes v. Rea*, 219 Pa. 279, 68 A. 836 (1908).

■ The filing of a petition for reorganization under Chapter 11 does not expand the rights of the debtor under an option agreement. *See, In re Trigg*, 630 F.2d 1370, 1371 (10th Cir.1980); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir.1972); *Good Hope Refineries v. Benavides*, 602 F.2d 998 (1st Cir. 1979). Although these cases were decided under the Bankruptcy Act of 1898 and involved leases or licensing agreements, the Court finds these factors to be minor distinctions. The reasoning and authority expressed therein are most persuasive when applied to the case *sub judice*.[13]

A review of recent cases under the Bankruptcy Code does not persuade us any differently. For example, a recent case in Hawaii involved a situation similar to that faced by this Court. A contract to sell a hotel permitted the buyer to purchase the property until a certain date. A petition under Chapter 11 was filed the date the agreement expired. The Court found that the agreement terminated and all rights under it were extinguished. *In re Continental Properties*, 15 B.R. 732, 735 (Bkrtcy. D.Haw.1981).[14] We are entirely in agreement with the reasoning expressed in this case. In the case at bar, therefore, the Court finds the agreement to have expired on July 6, 1982. There is no interest which could be termed an executory contract and assumed by the debtor.

**12.** Paragraph 20. See, also, footnotes 3 and 5, supra, and related text.

**13.** Contra, *In re Gulfco Investment Corp.*, 522 F.2d (5th Cir.1975) (Trustee allowed a reasonable time to assume a land purchase agreement); *In re Santa Fe Development Corp.*, 16 B.R. 165 (Bkrtcy.App. 9th Cir.1981) (Majority applied 11

U.S.C. § 108 to allow the debtor 60 days to assume a land purchase agreement.)

**14.** See, also, In re Beck, 5 Bankr. 169 (Bankr.D. Haw.1980) (license agreement terminated postpetition; neither § 362 or § 365 provided an extension).

The debtor, furthermore, alleges that Section 108(b) of the Bankruptcy Code grants the debtor an automatic extension of sixty (60) days to assume the agreement. 11 U.S.C. § 108(b). *See, also, In re Santa Fe Development Corp.,* 16 B.R. 165 (Bkrtcy. App. 9th Cir.1981). In this case, however, over five (5) months have passed since the filing of the petition. The period granted by section 108 has expired and rendered this question moot.

In conclusion, the Court finds that all interests of Intermet in the subject property have terminated. An Order will be entered dismissing the complaint.