**In re BENGE CORPORATION, Debtor.**

**Bankruptcy No. 85-00121.**

United States Bankruptcy Court,
D. Hawaii.

Aug. 7, 1985.

R. Charles Bocken, Honolulu, Hawaii, for Kaiser.

Richard G. MacMillan, Honolulu, Hawaii, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION TO LIFT STAY

JON J. CHINEN, Bankruptcy Judge.

On March 14, 1985, Benge Corp. ("Benge") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On April 12, 1985, Kaiser Development Company ("Kaiser") filed a Motion to Lift Stay and a preliminary hearing was held on May 1, 1985 at which time the court continued the stay and scheduled a final hearing for May 14, 1985. The Court also requested supplemental memoranda from counsel on the issue as to whether the Deposit Receipt Offer and Acceptance ("DROA"), dated August 22, 1984, as amended by the Amendment, Final Extension of Closing Costs and Automatic Termination of Deposit, Receipt, Offer and Acceptance dated February 28, 1985 terminated by its own terms on March 14, 1985 as claimed by Kaiser.

At the hearing scheduled for May 14, 1985, all counsel agreed that the matter should be continued until May 24, 1985 to permit the parties to arrive at a settlement and that, if there were no settlement by May 24, 1985, the Court was then to rule based upon the memoranda, pleadings and records in the file.

Thereafter, by agreement of all the parties concerned, the matter was continued until July 26, 1985 at 7:30 a.m. At said hearing, Benge's counsel stated that there was an agreement with Kaiser whereby Mr. Becker was to deposit $50,000.00 with Kaiser by noon of that day to show good faith in taking over the development from Benge. However, because Benge learned that Mr. Becker was not able to raise the necessary funding for that project, Benge offered to Kaiser a Mr. Henry Wong to replace Mr. Becker. Because this new offer was not yet resolved, the Court continued the matter until August 2, 1985 at 7:30 a.m. to give the parties an opportunity to reach a solution. The Court stated that, if there were no agreement among the parties, it would rule on August 2, 1985.

At the hearing on August 2, 1985, present were Richard MacMillan, Esq., representing Debtor, R. Charles Bocken, Esq., representing Kaiser; Gary Dubin, Esq. representing Mr. Frank and Mr. William Benge; Riccio Tanaka, Esq. representing Mr. William Becker, William Burgess, Esq., representing Mr. Barnes.

Mr. MacMillan explained the proposal of substituting Mr. Henry Wong for Mr. Becker. However, Ronald Yee, Esq., counsel for Mr. Wong, stated that Mr. Wong was only willing to provide the start-up funds and wanted to be repaid when the construction loan was available. Mr. Bocken stated that Kaiser was not willing to be further involved in any internal dispute of Benge, financial or otherwise, and stated that, because Mr. Becker did not deposit the $50,000.00 by 12:00 noon of July 26, 1985, Kaiser wanted the DROA of August 22, 1984, as amended, deemed of no further effect. Mr. Bocken acknowledged that someone had offered to deposit the $50,000.00 with Kaiser but that Kaiser did not accept said sum because it had no information on that "someone".

The Court, having been informed that there is no settlement, renders this Memorandum Decision based upon the memoranda, pleadings, and records in the file and on arguments of counsel. The issue is whether the DROA, as amended by the document dated February 28, 1985, automatically terminated as of March 14, 1985, when Benge failed to pay Kaiser $2,849,006.40 as provided for in the DROA, as amended.

## FINDINGS OF FACT

On or about August 22, 1984, Benge and Kaiser entered into a Deposit Receipt Offer and Acceptance, wherein Benge agreed to purchase and Kaiser agreed to sell a certain parcel of land situate at Kaneohe, Hawaii. Thereafter, by several agreements among counsel, the date by which payment of the consideration was to be made and the date of the final closing were extended several times. Finally, on February 28, 1985, Benge and Kaiser executed a document entitled Amendment, Final Extension of Closing Date and Automatic Termination of Deposit Receipt, Offer and Acceptance ("Final Extension").

The pertinent provisions contained in the Final Extension provide as follows:

(1) In Paragraph 2, Benge acknowledged that Kaiser had done all things required to be done on its part for closing on each of the previously agreed upon closing dates and, in each case, closing did not occur because Benge was unable to do so. Benge further agreed that it shall now and hereafter obtain any further consents or agreements required and if such consents or agreements are not obtained and closing does not occur on the new scheduled date of March 15, 1985, the DROA shall automatically terminate and Kaiser shall retain the $100,000.00 deposit and interest pursuant to paragraph 6.

(2) Paragraph 3 states that, on or before 12:00 noon on March 14, 1985, Benge shall tender to Kaiser a cashier's check from Bank of Hawaii or First Hawaiian Bank in the amount of $2,849,006.40.

(3) Paragraph 6 provides that, if Benge does not pay Kaiser as provided in Paragraph 3 or if the transaction does not close on or before 12:00 noon on March 15, 1985, for any reason whatsoever, the DROA shall automatically terminate without any further act on the part of anyone. Paragraph 6 further provides that, upon termination of the DROA, Kaiser shall retain the deposit of $100,000.00 plus interest for failure of Benge to pay as provided in Paragraph 3. Paragraph 6 also provides that this limitation of Kaiser's entitlement to only $100,000.00 plus interest is applicable only if Benge fails to make payments as required. In the event of any other default by Benge, other than the failure to make payments, in addition to retention of the $100,000.00 plus interest, Kaiser may pursue other remedies available to it on account of such default. If the termination is caused by the lack of the consents of the lessors and sublessors, then the $2,849,006.40 shall be returned to Benge and Kaiser shall be entitled to retain the $100,000.00 plus interest.

On March 14, 1985 at 10:55 a.m., Benge filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Benge failed to make the payment by 12:00 noon on March 14, 1985. As a result, Kaiser sent a letter, also dated March 14, 1985, stating that for failure on the part of Benge to make the payment as required, the DROA was automatically terminated as of 12:00 noon on March 14, 1985.

On April 12, 1985, Kaiser filed its Motion for Relief from Automatic Stay.

### CONCLUSIONS OF LAW

■ The DROA, as amended by the Final Extension, indicates that Benge had an option. If Benge failed to pay the $2,849,-006.40 on March 14, 1985, there was no breach on its part. Kaiser was limited to retention of the $100,000.00 deposit for granting Benge time from September 1984 until March 14, 1985 to raise sufficient funds to purchase the Kaneohe property. Kaiser could not ask for specific performance or seek other remedies against Benge.

There was no duty on the part of Kaiser to perform under the DROA as amended until Benge exercised its option. Once Benge paid the $2,849,006.40 on March 14, 1985, then an executory contract would come into existence and both Benge and Kaiser were then required to perform their duties. Failure to perform by either Benge or Kaiser then gave the other party a cause of remedy against the defaulting party.

However, in the instant case, failure to pay on March 14, 1985, did not automatically terminate the DROA, as amended by the Final Extension. Upon filing the petition for relief on March 14, 1985 at 10:55 a.m., Benge had 60 days thereafter to pay the $2,849,006.40 if it so desired, under Section 108(b) of the Bankruptcy Code.

The Ninth Circuit Bankruptcy Appellate Panel, in *In re Santa Fe Development, etc.*, 16 B.R. 165 (Bankr. 9th Cir.1981), faced a similar situation. In *In re Santa Fe Development, etc.*, after an extended litigation, the Seller and the Buyer entered into a stipulated settlement for the sale of certain parcels of land. The closing date was scheduled for June 16, 1980 and the stipulated settlement provided that the Buyer could extend the closing date by paying additional non-refundable deposits. The closing, however, could not be extended beyond September 16, 1980.

In accordance with the stipulated settlement, the Buyer extended the closing date until August 16, 1980 by making additional payments on June 15 and July 15, 1980. On August 5, 1980, the Buyer filed a petition for relief under Chapter 11. The Buyer failed to extend the closing date and failed to close on August 16, 1980. The Buyer filed a Complaint for Declaratory relief, seeking a determination as to the respective rights of the parties.

The Appellate Panel held that, under California law, it was clear that the Buyer would have lost all rights to the contract when closing was not extended beyond August 16, 1980. However, the Appellate Panel held that, under Section 108(b) of the Bankruptcy Code, the Debtor-Buyer has a minimum of 60 days after the order of relief in which to perform. The Appellate Panel noted that the Code provides for adequate procedures for the shortening of the 60-day period to prevent gross inequities.

■ Based on the ruling by the Ninth Circuit Appellate Panel in the *Santa Fe Development* case, this Court finds in the instant case that Benge had 60 days from March 14, 1985 to pay the $2,849,006.40 if it so desired. The 60-day period was extended by agreement to July 26, 1985. However, since Benge failed to perform as of March 26, 1985, the DROA, as amended, has automatically terminated and Benge has no further rights under the DROA, as amended.

An Order will be signed upon presentment.