**STATE of Oklahoma ex rel. OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY, Petitioner,**

v.

**WALTER NASHERT & SONS, INC., Respondent.**

**No. 47146.**

Supreme Court of Oklahoma.

Jan. 17, 1974.

Larry Derryberry, Atty. Gen., by Paul C. Duncan, Asst. Atty. Gen., and Marvin C. Emerson, First Asst. Atty. Gen., Oklahoma City, for petitioner.

Halley, Spradling, Stagner & Alpern by Delmer L. Stagner, Oklahoma City, for respondent.

LAVENDER, Justice.

On the 19th day of July, 1973, a contract was entered into between the Oklahoma Capitol Improvement Authority, an agency of the State of Oklahoma, and Walter Nashert & Sons, Inc. by which in consideration of the payment to Nashert of the total sum of Eight Hundred Twenty-nine Thousand, Nine Hundred and Forty Dollars ($829,940.00), the latter agreed to construct certain pedestrian tunnels within the capitol complex, such facilities to be for the benefit of the State of Oklahoma.

A copy of the Notice of Award of Contract and of the Contract are attached as exhibits to the Authority's petition filed in this Court.

Sometime after the 19th of July, 1973, the contractor entered upon the work and by the time of the commencement of these proceedings, had completed about 46 percent of the construction.

On December 28, 1973, the Authority adopted a Resolution which required Nashert to sign and file with the Authority an Affidavit as follows:

"I, the company, its officers or employees, have not been parties to any agreement or collusion among bidders, prospective bidders, architects or any other persons or companies, in restraint of freedom of competition by agreement to bid at a fixed price or to refrain from bidding, or otherwise, on the contract awarded to this company by the Oklahoma Capitol Improvement Authority on _____(Date) to construct _____(name and location of project)."

At the time of the adoption of the Resolution the Authority also adopted a policy that no further payments would be made to Nashert under the contract unless and until such affidavit was signed and filed with the Authority.

At that time, it is not now disputed, Nashert, pursuant to the agreement as it was originally drawn, was entitled to receive $240,300.00, and his claim for that amount had been filed. Nashert failed to sign and file the above affidavit. The Authority refused to approve the claim for payment on the sole ground that the affidavit had not been signed and filed. Thereafter, in accordance with the contract, Nashert suspended further work on the project and removed its men and much of its equipment from the scene.

This action was instituted by the Authority as an original proceeding in this Court. In its application to this Court to assume original jurisdiction the Authority asserts that because of Article VII, Section 4, Oklahoma Constitution, this Court should exercise its superintending control over inferior "Agencies, Commissions and Boards created by law" and (as set forth in the Notice given Respondent of these proceedings) determine the "validity of contracts heretofore entered into between the petitioner and the respondent." The petition of the Authority contains the request for "guidance in determining what payments if any should be made." We are also asked to grant any "additional relief that this Court deems just and proper."

In a Statement of Facts attached to the respondent's answer the latter frankly admitted that because of Nashert's expertise in performing the type of construction project contemplated a number of other company representatives did call one of Nashert's officers and ask for a suggested bid figure "which would be adequate for the job if they should be awarded the contract." It is stated that Nashert (Walter Nashert, Jr.) did furnish such a figure. But the respondent insists that the figure which Nashert did submit in its bid was not given to others, that in fact the computations which resulted in determining the total bid were not completed until shortly before the bid was made. Nashert asserts that some people might construe the activity which is above described as "collusion" between bidders notwithstanding that such practice has been customary in the construction business for a long time. The respondent takes the position that it is therefore being forced into either executing the affidavit of non-collusion (which does not define "collusion") in which event he could get paid the $240,300.00 which he has already earned but run the risk thereby of being charged with perjury because a prosecuting attorney might believe that the above facts actually constitute "collusion" or, refusing to sign the affidavit and thereby forfeit his money along with his contract or, to say the least, enter into protracted and expensive litigation concerning the matter.

In its brief in support of its position, respondent asserts several contentions as to

why the requirement of the non-collusion affidavit was not effective as it was made applicable to respondent. These contentions may be reduced to a common denominator as was argued in oral presentation of the matter, namely, that the Authority changed the rules of the game during its progress and at a point when it was about half over when it imposed an additional condition upon the contractor's right to be paid for work already done by it—the execution and filing of the non-collusion affidavit.

The issue was further clarified during the Attorney General's oral presentation when the statement was made that if this Court should find that the petitioner's requirement of the non-collusion affidavit was legally ineffective then, in such event, the Authority would probably proceed to pay the claim of the Contractor. The latter, through its attorneys, announced that if the claim was paid the contractor—as provided in the contract, that the contractor would return to the job and complete it in accordance with the contract terms. On the other hand, it was also made clear that if the payment was not made that eventually the contract would be treated as breached and the rights and obligations of the parties would be litigated in court. In the meantime, of course, the project would remain incomplete and the interest on the bond funds obligated to pay for the project would continue to accrue. It is quite apparent that if the matter is not resolved quickly the loss to the people of the State of Oklahoma can become a substantial one, especially considering the fact that we are in a period of rising costs with the possibility that it might cost considerably more to have the project completed at some later date by a different contractor than it would cost to have the job completed under the present contract.

Although we have determined to assume original jurisdiction herein because of the public importance of the matter and the need for an early decision (Application of County Courthouse Building Commission of Stephens County, Oklahoma, etc., Okl.

1965, 403 P.2d 501 and Morrison v. Ardmore Industrial Development Corporation, Okl.1968, 444 P.2d 816, 820) we decline to give "guidance in determining what payments if any the Authority should make to the contractor."

As we view the matter of payments to the contractor, whether the state agency should do so or not is not properly a matter for this Court in this proceeding. As we have said, the only question presented to us which could incidentally involve payments to the contractor, is whether the latter's refusal to sign and file the affidavit is a valid reason for the Authority to withhold payments earned under the contract. We here determine only the validity of the requirement for the execution and filing of the non-collusion affidavit, as such requirement pertains to the contractor involved in this proceeding.

Before proceeding further we deem it noteworthy that neither party to this matter urges the applicability of 61 O.S.1971, Sections 21 to 48, and particularly, Section 27, which latter section purports to require a non-collusion affidavit from bidders on state projects. Because of four (4) different opinions of the Attorney General's office that such statutes applied only to contracts which arose by reason of appropriations made from bonds authorized by Section 31, Article 10, Constitution, and that the bonds authorized by said provision of the Constitution have all been expended, it was the view of the Attorney General expressed in his oral presentation in this matter that at the time the contract involved in these proceedings was entered into there was no effective statutory requirement for the execution and filing of a non-collusion affidavit. It is the position of the petitioner that the authority to require such an affidavit exists in petitioner because it is charged with the responsibility of protecting public funds.

While the Court agrees with petitioner that it should be careful and protective of public funds, we are concerned with whether the requirement of the non-collu-

sion affidavit under the circumstances as disclosed in this proceeding, is authorized. While we hold no brief with allowing contractors on state construction projects to in effect retain the benefits of any agreement or collusion among them and other bidders or prospective bidders in restraint of freedom of competition which might result from an agreement to bid at a fixed price or to refrain from bidding, as we have already said, we have no allegation nor does the petitioner point to any evidence, before us that the respondent in this case and concerning the contract here involved, was engaged in any such activities. If the petitioner believes that the contractor was engaged in "collusive" activities we assume that petitioner will institute whatever actions it believes are justified under such circumstances.

Under the circumstances of this matter one may wonder about the value of having such an affidavit executed after the contract has been half-performed. Certainly if Nashert has been engaged in collusive agreements the execution of the affidavit that he has not would not add or detract from the right of the State to go to court for appropriate relief, if necessary. On the other hand the requirement that if the contractor does not execute the affidavit he shall in effect, forfeit his right to money under the contract which he has already earned seems harsh especially when one considers that there is no allegation at present that the contractor did engage in collusive arrangements with others by which the State was cheated and considering that there is no presumption that because he has not executed the affidavit he is therefore to be considered guilty of misconduct in connection with the contract.

■ Regarding whether the requirement of the non-collusion affidavit was an effective requirement we are cited to no authority by petitioner which authorizes a state agency to have more power to insti-tute unilateral material changes in an existing contract than exists in private entities. We therefore consider the authority of petitioner to make such changes to be no greater than that of a private agency. We are supported in this conclusion by 15 O.S.1971 § 151.

It is also provided that a contract is governed by mutual intention of the parties as it existed at time of contracting. 15 O.S. 1971 § 152. It is admitted that at the time the parties to this contract entered into it there was no requirement that before the contractor could be paid the payments earned by him under the contract he would have to execute an affidavit that he had not entered into collusive agreements with other bidders. The fact that no such affidavit was required does not mean, however, that collusive agreements, if they did exist, could not be grounds for litigation at some later date.

■ It is also generally held that modification of a contract requires the mutual assent of the contracting parties and that this assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract. 17 Am.Jur.2d "Contracts" § 465, page 935.

■ We hold that under the circumstances of this matter, the state of the pleadings and the rather limited issue which is before us, the requirement that before the respondent could be paid under the contract he must execute the non-collusion affidavit was in effect a material modification of the contract which did not have the assent of both parties and was therefore invalid.

Justice WILLIAM A. BERRY having certified his disqualification in this case, the Honorable C. F. BLISS, Jr. was appointed special justice in his stead.

All the Justices concur.