In re **FUTURE GROWTH ENTERPRIS-ES, INC., d/b/a Tony's Farm Fresh Market, Debtor.**

**Bankruptcy No. 85–05545G.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 23, 1986.

Melvin Lashner, J. Scott Victor, Melvin Lashner Associates, Philadelphia, Pa., for debtor, Future Growth Enterprises, Inc., d/b/a Tony's Farm Fresh Market.

Michael A. Bloom, Bryna L. Singer, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa., for lessor, Logan Square, Inc.

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

**2.** In explaining what factors led it to file a chapter 11 petition, the debtor recites a litany of

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The primary issue for consideration in the instant case is whether 11 U.S.C. § 108(b) of the Bankruptcy Code ("the Code") may give a debtor an additional 60 days in which to exercise an option to extend a lease of commercial realty notwithstanding 11 U.S.C. § 365(d)(3) of the Code. For the reasons stated below we conclude that § 108(b) may extend the time for exercising the option.

The facts of this case are as follows:[1] The debtor is a retail grocer which leases a parcel of improved realty from Logan Square, Inc. ("Logan"). The current lease runs from July 1, 1981, until June 30, 1986, with an option to extend the lease until 1991. The lease provides that the option must be exercised at least six months prior to the termination of the current term which is, as stated, June 30, 1986. The debtor filed a petition for reorganization under chapter 11 of the Code on December 27 and exercised the option to renew on February 22, 1986.

The debtor is currently in default under the lease in the amount of $26,720.25 which the debtor proposes to cure over the course of a year in monthly installments of $2,225.69. While the debtor asserts that its gross receipts for the first two months of post-petition operations totaled $365,000.00, its alleged net profits were only $8,000.00—an average of only $4,000.00 per month. Under its proposal the debtor must pay 55% of this purported monthly income to Logan to cover lease arrearages, leaving the debtor only $1,773.31 per month for any other unexpected expenses. We find that the debtor's financial track record is too sparse for extrapolating an expected monthly profit of $4,000.00 over the next year. Furthermore, such a cushion would be insufficient to cover the myriad unexpected expenses that the debtor must inevitably face.[2] Under the repayment proposal

deplorable conditions on the realty in question. The debtor advanced this stance in an effort to exonerate itself from culpability in failing to fulfill its financial obligations. Under the terms of the lease the debtor is the party responsible

the debtor has failed to provide Logan with adequate assurances that the arrearages will be promptly cured.

The debtor filed a motion for the assumption of the current lease term and the five year term beginning in July of 1986. Logan then filed a motion for relief from the automatic stay in order to retake the premises.

The first issue for consideration is whether the debtor timely exercised its option to extend the lease term. The lease required the exercise of the option at least six months prior to the termination of the lease on June 30, 1986. The debtor filed its petition for reorganization on December 27, 1985, and exercised the option on February 22, 1986. The debtor contends that under 11 U.S.C. § 108(b) of the Code, it had an additional sixty days after the filing of the petition to exercise the option. Section 108(b) states as follows:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Logan contends that this provision is in derogation of another provision of the Code dealing more particularly with the leasing of realty:

> (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), aris-

ing from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3). The heart of the conflict perceived by Logan is that the 60 day period under § 108(b) is given by the Code automatically, as a matter of right, while the 60 day period under § 365(d)(3) may be granted by the court only for cause in light of the particular facts of the case.

▮▮▮ The resolution of this dispute is that the 60 day period under § 365(d)(3) may be granted by the court to temporarily relieve the debtor of the duty to perform all *current obligations* specified in the lease, such as payment of rent or maintenance of the premises. Under § 108(b) the 60 day extension is for the filing of any "pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar default...." Section 108(b) speaks of extensions for curing *past defaults* or for the filing of specified types of *paperwork*. The exercise of an option falls squarely within the "paperwork" provision of § 108(b) rather than the "current obligations" provision of § 365(d)(3) and hence, the debtor's exercise of the option was timely under § 108(b).

▮▮▮ This result leads us to the question of whether we should grant the debtor's motion to assume the lease for the duration of the current term and the option term.

to repair the bulk of the offensive conditions. From the remainder of the alleged $4,000.00 monthly profit, the debtor must find the funds

to repair these conditions. Such a projected result is far too grandiose in light of the facts produced at the hearing.

The operative language of the Code is found at 11 U.S.C. § 365(b)(1) and (b)(2):

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(b)(1) and (b)(2). Under § 365(b)(1)(A) the debtor must cure the $26,720.25 in arrearages under the lease or provide adequate assurances that it will be promptly cured. We found above that the debtor has failed to provide adequate assurances that the deficiency will be cured.

Its finances are currently much too precarious. We will consequently deny the debtor's motion for assumption of the lease.

■ However, the remaining issue in this case is Logan's motion for relief from the automatic stay which would permit Logan to retake the premises occupied by the debtor. Under 11 U.S.C. § 362(d)(1) we may grant Logan relief from the automatic stay "for cause." [3] Under § 362(d)(1) "cause" for relief from the automatic stay is present when the lessor proves that the debtor is significantly in default under the lease, particularly when the debtor has failed to move successfully for assumption of the lease. *In Re Law Clinic of Mott & Gray, P.C.*, 39 B.R. 73 (Bankr.E.D.Pa. 1984); *In Re 163rd Street Medical Corp.*, 47 B.R. 869, 871 (Bankr.S.D.Fla.1985); *Fineberg v. Cowboy's, Inc.*, 24 B.R. 15 (Bankr.S.D.Fla.1982); *In Re McGovern Auto Specialty, Inc.* 40 B.R. 521 (Bankr.E. D.Pa.1984). Since we conclude that "cause" is present, we will accordingly enter an order granting relief from the automatic stay.[4]

---

**3.** (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

**4.** NOTE: On May 22, a day prior to the issuance of this opinion, and two months after the case had been argued, the court received a letter from Logan's counsel containing some purported evidentiary material, offering additional "causes" for granting relief from the stay. Neither the statements in the letter nor the purported evidence, being clearly inadmissible, in the issue before us, have been considered by the court in this opinion.